```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                         ATHENS DIVISION

ELIJAH R. WASHINGTON,             *

     Plaintiff,                   *

vs.                               *
                                         CASE NO. 3:11-CV-29 (CDL)
VERIZON   COMMUNICATIONS,   INC.  *
and VERIZON PENSION PLAN FOR
MID-ATLANTIC ASSOCIATES,          *

     Defendants.                  *
```

O R D E R

This action arises from the termination of Plaintiff Elijah Washington ("Washington") from his employment with Bell Atlantic Corporation ("Bell Atlantic"), predecessor to Defendant Verizon Communications, Inc. ("Verizon"), on February 27, 1989 and Verizon's subsequent refusal to grant Washington's request for a disability pension, Verizon's placement of Washington in a deferred vested pension plan, and issues involving Washington's company stock. Washington, proceeding *pro se*, brought this action against Defendants asserting violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Securities Act of 1933 ("1933 Act"), as amended, 15 U.S.C. § 77a *et seq.* Presently pending before the Court are cross-motions for summary judgment (ECF Nos. 40, 47, 49). For the reasons below, the Court grants Defendants' motion

for summary judgment (ECF No. 47), rendering all other pending motions (ECF Nos. 40, 44, 48-49) moot.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

The record reveals the following facts. Unless otherwise noted, the facts are undisputed for the purposes of the pending motions.

Washington was employed by Bell Atlantic, the predecessor of Verizon, from October 23, 1967 through February 27, 1989.[1]

---

[1] Bell Atlantic merged with GTE Corporation on June 30, 2000 and changed its name to Verizon Communications Inc. in September 2000. Defs.' Statement of Material Facts Ex. 2, Bannigan Decl. Ex. 2-B, Defs.' Answers & Objections to Pl.'s 2nd Set of Interrogs. ¶ 1.A, ECF No. 46-8 at 13.

Compl. Attach. 1, Letter from R. Smith (Aug. 30, 1994), ECF No. 7-1 at 1. Washington missed work for an extended period of time due to a back injury, which prevented him from performing the duties of his job as a motor messenger when he returned to work in 1988. *See* Defs.' Statement of Material Facts [hereinafter Defs.' SMF] Ex. 3, Jukins Decl. Ex. 3-A, Letter from S. Jukins to E. Washington (June 13, 2007) [hereinafter Jukins Letter] Attach. 1, Feb, 27, 1989 Meeting Notes, ECF No. 46-12 at 6. Washington could no longer perform the motor messenger job because of medical restrictions due to a back injury, so Bell Atlantic temporarily assigned Washington to the job of a rider with other messenger drivers and then permitted him to attempt to qualify for other positions, but he failed to qualify and was thereafter terminated. *Id.* at 6-7; *see also* Defs.' SMF Ex. 1, Storms Decl. Ex. 1-H (Part 2), Letter from D. Fish to E. Washington (Mar. 28, 2008), ECF No. 46-6 at 170 [hereinafter Fish Letter] ("To clarify, our records indicate that the last position you held with the company was a Motor Messenger. You then tested for clerical positions and a traffic operator position. Your employment was terminated when you failed to qualify for these positions."); Jukins Letter, ECF No. 46-12 at 4 (discussing position testing and failure to qualify).

Washington claims that he was "'Terminated' for an unlawfully, Handicap Discriminatory Cause." Compl. ¶ Compl. I,

3

ECF No. 7. Verizon responds that Washington was terminated for performance reasons when he failed to qualify for an alternative position. *See* Fish Letter, ECF No. 46-6 at 170 ("[y]ou ask for the exact reason for your termination . . . you were terminated for performance reasons. . . Your employment was terminated when you failed to qualify for these [alternative] positions."); Jukins Letter, ECF No. 46-12 at 4 (stating that Washington was terminated when he failed to qualify for alternative positions). Washington does not assert any claims in this action based on the reason for his termination.

Because of his employment with Bell Atlantic, Washington is a participant in the Verizon Pension Plan for Mid-Atlantic Associates, formerly known as the Bell Atlantic Pension Plan, ("the Pension Plan"). Defs.' SMF Ex. 1, Storms Decl. ¶ 4, ECF No. 46-1 at 3. When he was terminated on February 27, 1989, Washington was forty-six years old with twenty-one years and four months of credited service under the Pension Plan. Storms Decl. Ex. 1-H (Part 2), Certificate of Right to a Deferred Vested Pension, ECF No. 46-6 at 154 [hereinafter Certificate of Right]. Based on his term of employment, Washington was eligible to receive monthly pension payments in the amount of $414.85 under a Deferred Vested Pension once he reached age sixty-five. *Id.*; Storms Decl. Ex. 1-A, Bell Atlantic Pension Plan § 4 ¶ 1(b)(i), ECF No. 46-1 at 30-31 [hereinafter Pension

Plan].  Washington also owns fifty-eight shares of Verizon common stock, the last shares of which he acquired in 1990. Defs.' SMF Ex. 4, Gereb Decl. Ex. 4-A, 12/13/2011 Certificate Summary, ECF No. 46-13 at 5.

In 1990, Bell Atlantic authorized a vested pension for Washington under the Pension Plan.  Storms Decl. Ex. 1-H (Part 2), Letter from R. Fowler to E. Washington (Mar. 6, 1990), ECF No. 46-6 at 152.  Under this authorization, pension payments were to begin when Washington reached age sixty-five. Certificate of Right, ECF No. 46-6 at 154.  Alternatively, he could elect to receive a reduced pension payment at age fifty-five.  Pension Plan § 4 ¶ 1.(b)(iii), ECF No. 46-1 at 31-32. Washington acknowledged receipt of the Certificate of Right to a Deferred Vested Pension.  Storms Decl. Ex. 1-H (Part 2), Acknowledgement of Receipt, ECF No. 46-6 at 156.

In 1996, Washington wrote a letter to Bell Atlantic, stating that he disagreed with Bell Atlantic's decision and quoting Bell Atlantic's statements regarding a reduced service pension for retirement before age fifty-five.  Storms Decl. Ex. 1-H (Part 2), Letter from E. Washington to B. Wright (Feb. 8, 1996) 1, ECF No. 46-6 at 132.  He further stated: "I want a <u>disability pension</u> or <u>service pension</u> or <u>deferred vested pension</u> whichever I did/do qualify for which is to my needs/benefit(s) and at earliest qualification."  *Id.* at 2, ECF No. 46-6 at 132.

5

On August 23, 1997, Washington requested a deferred vested pension, stating that he would be "55 years of age this Dec. 12, 1997." Storms Decl. Ex. 1-H (Part 2), Letter from E. Washington to B. Wright (Aug. 23, 1997), ECF No. at 147.  Washington, however, contends that "when [he] turned 55 years of age December 12, 1997 and against the provisions of the Pension Plan and without [his] knowledge and understanding was placed in a 'Deferred Vested Pension'" by Verizon.[2]  Compl. ¶ Compl. II.

Subsequently, Washington began writing letters to Bell Atlantic and later to Verizon requesting a disability pension and/or a service pension as well as other insurance benefits. *E.g.* Storms Decl. Ex. 1-H (Part 2), Letter from E. Washington to President, Bell Atlantic (July 5, 1999), ECF No. 46-6 at 104-05; Storms Decl. Ex. 1-H (Part 2), Letter from E. Washington to V. Bartley (April 27, 2000), ECF No. 46-6 at 30.  Bell Atlantic and Verizon denied these requests, informing Washington he was not qualified for the pension plans he requested. *E.g.* Storms Decl. Ex. 1-H (Part 2), Letter from V. Bartley to E. Washington (Mar. 15, 2000), ECF No. 46-6 at 106; Storms Decl. Ex. 1-H (Part 2), Letter from B. Block to E. Washington (Feb. 19, 2008), ECF No. 46-6 at 12-14.

---

[2]  Despite this apparently disputed issue of fact, Washington's Complaint is dismissed for other reasons as discussed below.

6

In September 2007, Washington filed a lawsuit in the United States District Court for the Northern District of Georgia, complaining that he was discriminatorily terminated on the basis of his race, sex, and "handicap of being injured on the job" in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Compl. ¶¶ 3-4, 6, *Washington v. Corp. Serv. Co. Verizon Wireless*, No. 1:07-CV-02262-RLV (N.D. Ga. Sept. 17, 2007), ECF No. 1. Washington specifically alleged that after being injured at work, he could not physically perform his job, and was therefore "terminated 2/27/89 instead of being placed on disability retirement." *Id.* ¶ 8. He further alleged: "At approx. age 60 I fought for and was given 'an associate reg pension pln' of $130.00 monthly without health and life insurance, I am not being told how much of my pension is going into Verizon stocks. Shanon Jukins, Sr. staff consultant – benefits has stopped her co-operations." *Id.* That court dismissed Washington's Complaint. Order, *Washington*, No. 1:07-CV-02262-RLV (N.D. Ga. Dec. 13, 2007), ECF No. 16.

After this dismissal, Washington continued writing letters to Verizon requesting a change from his current pension to a disability retirement pension, and he also sought health insurance, life insurance, and any other benefits available under a disability pension. Storms Decl. Ex. 1-H (Part 2), Letter from E. Washington to S. Jukins (Dec. 29, 2007), ECF No.

7

46-6 at 178. Verizon denied this request based on the Plan and Washington's election to receive the reduced deferred vested pension benefit at age fifty-five. Storms Decl. Ex. 1-H (Part 2), Letter from B. Block to E. Washington (Feb. 19, 2008) 2, ECF No. 46-6 at 13. Washington appealed this denial and submitted medical records and a letter from his treating physician stating that he was disabled because of a back injury that occurred on March 17, 1976. *See* Storms Decl. Ex. 1-H (Part 1), Letter from E. Washington to D. Fish (Apr. 2, 2008), ECF No. 46-5 at 52-53 ("Yes I intend to have my issues reviewed by the Verizon claims review committee."); Letter from R. Carter (July 17, 1995), ECF No. 46-5 at 56. The review committee denied Washington's appeal, referencing Washington's lack of qualification under the Pension Plan for a service or disability pension and his election to receive early payments in a reduced amount from his deferred vested pension. Storms Decl. Ex. 1-B, Letter from S. Wallace to E. Washington (July 2, 2008) 1 & 4-5, ECF No. 46-2 at 2 & 5-6.

Washington again submitted a claim for additional pension benefits under the Pension Plan in 2010, claiming entitlement to an unreduced service pension. Storms Decl. Ex. 1-H (Part 1), Claim Initiation Form, ECF No. 46-5 at 214-15. Based on the same reasons for denying Washington's prior requests for changed benefits, Verizon denied this claim. Storms Decl. Ex. 1-H (Part

8

1), Letter from B. Block to E. Washington (Oct. 21, 2010), ECF No. 46-5 at 207-10.

## DISCUSSION

### I. Washington's ERISA Claims

Washington claims that he was denied a disability pension and/or a service pension and then placed into a deferred vested pension plan in violation of ERISA. Pretermitting whether these claims have substantive merit, the Court finds that they are time barred.

In an ERISA action, the Court must apply the statute of limitations of the state where the action is brought. *Warren v. Schwerman*, 155 F. App'x 416, 418-19 (11th Cir. 2005) (per curiam) (citing *Harrison v. Digital Health Plan*, 183 F.3d 1235, 1238 (11th Cir. 1999)). Thus, the Court must look to Georgia law for the appropriate limitations period. Where an ERISA claim for benefits is brought in Georgia, the Georgia six-year contract statute of limitations, O.C.G.A. § 9-3-24, applies. *Id.* at 419. An ERISA cause of action "accrues when [Washington] knew or should have known of the injury." *Id.* (citing *Bowling v. Founders Title Co.*, 773 F.2d 1175, 1178 (11th Cir. 1985)).

The record shows that, at the latest, Washington knew of the alleged injuries April 27, 2000. Washington wrote a letter in February 2000 to Bell Atlantic, stating that, among other things, he was "not allowed a regular or disability retirement."

9

Storms Decl. Ex. 1-H (Part 2), Letter from E. Washington to D. Sacco (Feb. 15, 2000), ECF No. 46-6 at 108.  After receiving Washington's many letters requesting different pension benefits, on March 15, 2000, Verizon again clearly denied Washington's requests to be placed in a disability, service, or other pension plan and for other benefits, and Verizon informed Washington that he was not qualified for the pension plans he requested. Storms Decl. Ex. 1-H (Part 2), Letter from V. Bartley to E. Washington (Mar. 15, 2000), ECF No. 46-6 at 106.  Confirming his knowledge of what he alleges to be his injuries in this action, Washington wrote a letter to Verizon on April 27, 2000 stating, "When I did not pass [the clerical position tests], I requested a disability retirement which I was denied.  The union processed my grievance to arbitration and then terminated it."  Storms Decl. Ex. 1-H (Part 2), Letter from E. Washington to V. Bartley (April 27, 2000) ¶¶ 4-5, ECF No. 46-6 at 31.  When Washington wrote this letter, Washington knew he had not received the pension benefits that he seeks to recover through this action. Washington, however, did not file this action until March 2011, nearly eleven years after the 2000 letter in which he affirmed his awareness that Verizon did not place him into the pension plans in which he believed ERISA entitled him to participate. Thus, Washington's ERISA claims are untimely because he failed

to file this Complaint within the six-year statute of limitations.

## II. Washington's Securities Act of 1933 Claims

In addition to his ERISA claims, Washington purports to assert claims under the 1933 Securities Act. Verizon contends that Washington's allegations fail to state a claim under the 1933 Act and that Washington has failed to point to any conduct that would amount to a violation of the 1933 Act.

First, Washington asserts that Verizon violated the 1933 Act by failing to provide him with a copy of his original stock certificate. He seeks the original stock certificate and a return of the money he paid when he previously sought to obtain his original stock certificate. Compl. ¶ Mot. III. Second, Washington claims a violation of the 1933 Act for issuing unknown amounts of shares to companies IDEARC and FairPoint Communications, Inc., which have now filed for bankruptcy. *Id.* ¶ Compl. III(2). Third, Washington alleges that "With IDEARC, Plaintiff's wife was deceptively lured to Dallas, TX only to be told in Court by the Honorable Presiding Judge that IDEARC was no longer an affiliate of CT Corp. Systems and Verizon Wireless so the Honorable Judge could not rule in Plaintiff'z (sic) favor and IDEARC had no monies." Compl. ¶ Compl. III(3). Washington seeks return of the funds expended by his wife in going to Dallas to represent him. Compl. ¶ Mot. III. Fourth, Washington

11

"has asked in writing that CT Corp. Systems not issue any more shares of stocks to any other companies."  Compl. ¶ Compl. III(4).  Finally, Washington alleges that the 1933 Act was violated because "On October 21, 2010 and January 24, 2011, fictitious addresses were given to Plaintiff in the quest for the copy of his original stock certificate."  Compl. ¶ Compl. III(5).

The Court finds that neither Washington's allegations nor anything he has pointed to in the record demonstrates that Verizon or any of its predecessors violated any provision of the 1933 Act.  Therefore, summary judgment is granted to Defendants as to Washington's 1933 Act claims.

## CONCLUSION

The Court grants Defendants' motion for summary judgment (ECF No. 47), rendering all other pending motions (ECF Nos. 40, 44, 48-49) moot.

IT IS SO ORDERED, this 5th day of June, 2012.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE
